You may call the next case. Case number 13-5181, United Pet Supply v. City of Chattanooga, et al. Oral argument would take 15 minutes per side. Mr. Schauer for the applause. Good afternoon. I'd like to reserve three minutes for rebuttal, if I may, Your Honor. This is a Section 1983 case in which a mall pet store is seeking to hold three animal control officers personally liable for $10 million in damages for allegedly violating the pet store's constitutional rights. The district court erred as a matter of law in denying the officers qualified immunity for several reasons. The court's clearest legal error was its misapprehension and misapplication of the second prong of the qualified immunity test. And that requirement states that the alleged constitutional violation, even if it exists, must have been clearly established at the time of the alleged unconstitutional conduct. Because the alleged rights in this case were not clearly established, we would ask the court to reverse the district court. Well, you say that, but if a police agency or someone acting with police powers just goes in without authority and seizes records and so forth and so on, isn't that law pretty clearly established that that would be unconstitutional? I would agree that if, in the usual circumstance, the run-of-the-mill search-and-seizure case, that that's the- In this case, the run-of-the-puppy mill. Well put, Your Honor. My point is that this case is extremely novel. The research of the counsel here have produced only a handful of cases addressing the instance which we have here, which is very different than the normal police officer search-and-seizure case. And the cases that existed at the time that the officers took these actions held that they were not unconstitutional. And I'd like to point the court to two decisions. One, the Lowery v. Fares case, which was decided by the Eastern District of Tennessee, the same district that this appeal arises from. In that case, there was cattle that apparently was in severely poor condition. The officers seized them without a warrant and without providing a hearing to the owner of the cattle. The cattlemen who filed a 1983 action in federal court saying, You violated my due process rights without a hearing. You violated my Fourth Amendment rights. You seized my cattle without a warrant. And there were not emergency conditions. You could have gotten a warrant and you could have had a hearing. And the district court held very clearly, as a matter of law, there was no Fourth Amendment violation, and there was no requirement to a pre-deprivation hearing. That isn't binding on us, though. Well, sir, it was a published case that was affirmed by the Sixth Circuit without opinion for the reasons stated by the district court. And so I would defer to your honors to determine whether you're bound by that table opinion. Didn't the district court take the view that whether or not qualified immunity would be available was dependent upon facts which were in dispute in this case? Yes, your honor. And that's where I think the district court got the qualified immunity analysis, misapprehended the qualified immunity analysis. My point is, even if our first part of our brief fails to persuade you that this should be decided as a matter of law, and assuming that the district court is right on that, that there is a genuine issue of material fact, we give that. The district court still erred in the second prong, and that's what we think is the clearest error requiring reversal, is that not only must there be a right in this context, which the court might establish in this case, but it's got to have been clearly established at the time that the actions were made. And the Eleventh Circuit had held that there was no due process right at the time. The Eastern District in the Lowry case had said that there was no due process right. So our primary point, your honor, is even if Judge Collier was correct in finding a genuine issue of material fact, as a matter of law, his decision should be reversed. So there wouldn't be any due process right no matter how dire the conditions might have been in that story? That's right, your honor, because the due process inquiry under Matthews v. Eldridge is a very abstract balancing of the interests of the parties involved. And the Eleventh Circuit did that balancing in the Hill v. Rivkin's case, and it said very clearly there were compelling state interests involved here. It's a temporary deprivation pending a formal hearing. In this case, it was nine days later. And also in this case, they had a hearing in state court the very day of the seizure, and the risk of error was very small. These were not volunteers that didn't know anything about animal welfare. These were professional officers who in their professional judgment made that call. They weren't exactly that. Well, your honor, I... They were kind of a volunteer. Well, your honor, I disagree with that. They were hired specifically as special police officers by the city. Well, I understand that, but they had an agenda. I don't think they did, your honor. What about their web page afterwards saying, Boycott the whole mall if we don't get relief here? Your honor, that was not posted by any McKamey official. The record is pretty clear, and it's not disputed that that was a city employee who did that. And I think McKamey would tell your honor that they were appalled that that was done, but McKamey is not to blame. But even if that were the case, even if McKamey did, this is a question of objective reasonableness, and the subjective motivations and the subjective intent of the officers is irrelevant. And I can cite some authority for you on that, your honor. Ashcroft v. Al-Kid, the most recent case, making that point. So to the extent you don't... an issue of fact as to whether they had mischievous intent, it's not a material fact for this legal question. Are you addressing the seizure of the records as well, or just the seizure of the animals? Well, there hasn't been much said about the seizure of the records, your honor. As I understand the records, they go hand-in-hand with the animals. They're only records pertaining to the animal, its medical history. And so McKamey took the view that in order to ensure that the animals were properly cared for and probably treated, that they needed to have those records with them. So the records pertain only to the animals that were seized? Yes, ma'am. And those records were provided voluntarily by Brandy Hallman, by pet store employees. There was no forcible seizure of those records. One thing that was confusing to me is whether the qualified immunity decision was being made by the district court on the basis of the motion for judgment on the pleadings or on the motion for summary judgment. The two rulings were a day apart, as I understand it. So was there, in fact, evidentiary material pertaining to the summary judgment motion that would have made the summary judgment decision based on different material than the pleadings decision? Yes, ma'am, your honor. It was just a delay in the court issuing its opinion on the motion for judgment on the pleadings. There was extensive evidence presented, primarily the city court trial that took place nine days after the hearing where the city court held, as the state court had held before it, as the McKamey officers had found, and as the state officer had found, that the seizure of the animals were, quote, unquote, necessary. But the district court's opinion doesn't really go into any of that. That's correct, your honor, and that's one of the reasons we think the court got it wrong. The most glaring error is how it applied that clearly established prong, is it made the mistake that district courts often do and have been reversed consistently by the Supreme Court, because what the court said was the right to procedural due process is clearly established, and so the clearly established requirement is satisfied. Period. End of story. That's what the court did for both the due process and the Fourth Amendment. And the Ashcroft case, Pearson v. Callahan, Saucer, the Supreme Court has repeatedly reversed district courts for making that very same mistake. And what they needed to do here was look at a particularized view of the facts and the context, and that's what's required, and the district court just didn't do that here. And if you do that, you'll see the reasonableness of what the officers did objectively as a matter of law, because the only cases on point in this circuit, the Lowry case, said that they could do it, and the Eleventh Circuit case said that they could do it, and in light of that, it's unfair to impose, it's the point of qualified immunity, it's unfair to impose liability for these officers' failure, apparently, to predict yet-to-be-established constitutional law. Isn't there a question of whether or not your clients, as employees working for a nonprofit private entity, are entitled to assert qualified immunity? Yes, Your Honor, that question has been raised. I think the very recent decision in Filarski from the Supreme Court answers it. In Filarski, there was a private attorney who was hired by a city to conduct an investigation, and there was a question of whether that attorney's status as a private actor, despite that, whether he would be entitled to qualified immunity. And the Supreme Court, in a very clear opinion, said, it does not matter whether you are a full-time employee or part-time employee. If you are pursuing a public function, then you are entitled to qualified immunity. And it explained away the previous cases. The Richardson case, in particular, is limited to those facts. Here, the officers were special police officers. And if you look in Filarski— Where is there evidence of that? Is it evidentiary material, or is it in the pleadings, or where? I'll give you a few sites here, Your Honor. The two officers, Walsh and his affidavit, that's in her affidavit, page ID 1604, and she took an oath and signed it as a special police officer. That's at page ID 1623. Officer Nicholson's affidavit, 1636, and his oath at 1649. And then if you look in the contract between the city and McKamey, it's clear that the officers will have the same powers as regular police officers but for arrest, and that's at page ID 2170. If you look in the animal code, section 7-8, that's page ID 1501. These were special police officers. And Filarski has a sentence right on point that says, at common law, a special constable was entitled to the same immunity as a regular constable. Another question. Are you claiming qualified immunity for the entity, Animal Welfare, Animal Care Trust? Yes, Your Honor. So normally, qualified immunity is for individuals. How does that qualify? I see my time has expired, if I may. There has been no dispute here, Your Honor, regarding that issue, so we have not had an opportunity to brief that. The only potential liability for McKamey would be through its officers in this instance. We'd be happy to provide some briefing for you on that question, if you'd like. If it pleases the Court, Your Honor, my name is Andy Pippenger. I'm here on behalf of United Pet Supply Pet Shop. A couple of points, Your Honor, I think that are very important initially. This is an interlocutory appeal. There has been appeal of only one issue, and that is the qualified immunity issue. The remainder of the case remains in the trial court. And that's a very important issue because, Your Honor, under 1291, issues are limited to pure issues of law. And under this Court's holding in Tye v. Quigley, that has implications. A party may appeal an issue of qualified immunity, but the Court may consider only pure legal questions. And the way that Quigley, the Quigley Court, considered that point, if there are disputed facts, the Quigley Court said the Court must look at those issues from the plaintiff's perspective. Specifically, the Court stated that a defendant raising a qualified immunity defense may not appeal a district court summary judgment order insofar as that order determines whether the pretrial record sets forth a genuine issue of material fact. Well, we don't have that situation here as such. If these individuals, if the Court was wrong and we were to say they're entitled to qualified immunity, there would be no case left in the district court other than the city is still a nominal defendant, but they wouldn't have any liability if these people didn't. The application of the principle to this case, Your Honor, is that all of their arguments on whether or not the rights were clearly established under the second prong of immunity are predicated on disputed facts. What facts are disputed here? There are legion facts that are disputed, Your Honor, particularly their claims under the Fourth Amendment and whether they were required to provide due process on the license and on the animals is predicated on the idea that there was an exigency that permitted them to go in and suspend the license summarily without a hearing, and that's an issue that was hotly disputed. And McKamey's principle argument on that was that under the Parrott rule, as the Court is aware, if a pre-deprivation hearing is either impracticable or impossible, like in Parrott when a prison guard discards of a prisoner's mail, there's a taking, but there's no opportunity. It's impossible to have a hearing ahead of time. In certain circumstances, a pre-deprivation hearing is not possible, and in this case, we always argue before the Court below that a pre-deprivation hearing was both possible and practicable, and McKamey's response to that always throughout their briefing and their argument is that there were exigencies that precluded that possibility. And you do draw a distinction between any exigencies with regard to the animals and the records specific to the animals and the license, the pet store license? I believe, Your Honor, that our contention has always been that there was no exigency which would justify a pre-deprivation taking under either case. So let's assume that just for the sake of argument, let's say even if there were some exigency, is there a distinction between the seizure of the animals and the provocation of the license? I believe there is a distinction, Your Honor. There would be a distinction. As counsel pointed out, Lowry v. Ferries, which was, I believe, not simply decided by the same court but by the same judge, by the way, who brought this case before the Court, I believe that there is a distinction between animals. But in the present case, the facts below that were so disputed over whether there were exigencies were simply legion. For one thing, Your Honor, our client has always showed the district court that there was no exigent circumstance. The temperature, which was the principal complaint in the store, did not violate applicable state law at that time. We tried that issue before the very city court on cross-examination, and as we state in our brief, the applicable state law, which incorporates the Code of Federal Regulations for animal welfare, showed that we did not violate that law. I thought there was undisputed evidence of filth in the cages and cages that were broken and undisputed evidence of other nature that would suggest that the animals were in danger. That's a great question, Your Honor. The reality is that when the inspection occurred at approximately 8 a.m., the proof showed that the employees for the store were in the process of cleaning the store. And the proof from the city court trial, which we presented to the district court for review, showed that they went through the same procedure every day, cleaned the kennels, and that they were in the process of cleaning the kennels. Because this is a mall, they don't stay there overnight. And so when they come in in the morning, it's obviously necessary, without belaboring the point, it is necessary to clean those kennels after they've been left unattended for 8 hours. And so they were in the process of doing that, and that point is actually undisputed as well, Your Honor. And one of the main points that we made in our complaint was that the deck was essentially stacked here, that, in fact, when they arrived at the time to do their inspection, it was impossible to clean the store properly or have it cleaned at the time of the inspection because they were in the process of cleaning it after they had been left unattended overnight. Hypothetically, if animal welfare officials come to a place and think that the animals are in danger, can they seize the animals and afford the owner of the animals an immediate post-deprivation hearing and be consistent with constitutional principles? I believe that in that instance, Your Honor, that the court just described Lowry v. Ferris, where if there is an exigency, I believe that Parrott would permit an immediate appeal or an immediate seizure and a hearing thereafter. And in your case now, I understand you're not agreeing to my premise, but was there not an immediate post-deprivation hearing afforded to your client? No, Your Honor, there was not. I thought there was some hearing where you sought a temporary restraining order against the seizure of the animals. There was, Your Honor, but I think it's informative here on this point to divide out the two separate issues. You have the permit, which was revoked summarily at the time that they arrived that evening, and then there's the animals. Well, I'm talking about the animals. I haven't begun to talk about the permit. The animals, Your Honor, there was a temporary restraining order that occurred about two hours after. Well, the hearing was about three hours. You, your client, sought a temporary restraining order. Yes. And you had a hearing on the TRO? We had an immediate hearing at 1 p.m. on a TRO motion, which I initiated, asking the court to stop the seizure of the animals, and the court denied that motion. Okay, so you did have an immediate post-deprivation hearing. We had, and, well, there was a question of fact of whether all the animals had been extricated. It was the, they were taking the animals. That was in process at the time, Your Honor, but, yes, there was a hearing before. So it sounds like you got almost what you're asking for. No, Your Honor. Instead of a pre-deprivation hearing, you got it within a couple of hours, where you took the initiative, went to court, sought a TRO, and it was denied. Yes, everything the court said is true. I disagree, however, with the legal implications of that TRO. Under Matthews, I do not believe, Your Honor, that the TRO, which is first initiated by the party, which is deprived of the property, passes muster under Matthews. I don't believe, Your Honor, that the precedent would contemplate that the party itself must initiate that process. Secondly, it was not a meaningful hearing at a meaningful time in as much as the facts were still in dispute and we were still trying to figure out what was going on. A hearing can be too soon, and especially when under the, I hate to use the word exigent, but an emergency situation to a client where they are being deprived of property, it simply does not pass muster under a Supreme Court precedent for that to satisfy a due process that quickly. You brought up the permit revocation issue, and I must say that I'm a little bit confused about what each party's position is on appeal, on the permit revocation, and actually what happened on the permit revocation. So if you could clarify for me what your position is now. Is your position that the permit, that we're talking about the city permit, the city permit was revoked? Yes, Your Honor. I was there. I can explain it flawlessly. Thank you. The state, there are actually two different permits which do the same thing. The state of Tennessee issues a state pet dealer license, and the city, McKinney, issued what I would call a city permit to try to avoid confusion. And what happened on the day that they came in to seize the animals, after they took the animals, the executive director of McKinney wrote a letter to our client, the pet store, and said that there will be a hearing in city court in Chattanooga within nine days. I believe it was nine days. And during this period of time, you are not permitted to sell animals of any kind. You are, however, permitted to sell retail items such as, I don't know, dog collars and leashes and the like. But this is a pet store. So essentially all the goods of the store were taken, and by that fiat, that summary revocation, that permit was revoked. But is there a provision in the city laws, whatever they may be, that provides for permit revocation, or was this simply an action on the part of McKinney saying that they were, quote, revoking the permit? I'm a little bit confused about the legal authority that was relied on for this. Right, Your Honor. Well, we took the position that that was an unauthorized action, and particularly there's nothing in the city code that provides a hearing. But after they told the pet store that they could no longer sell animals, we appeared in city court under the belief that there would be a hearing on whether or not the license would be revoked. And, in fact, the city court was also under that apprehension, and as much as the city court told or ruled that McKinney was required to return the license or the city permit. And at that time, as we brief extensively, McKinney refused to return the permit at that time. And, in fact, McKinney took the position at that point that it would make a decision on reapplication, whether it would be permitted, whether the pet store would get its license. And then, subsequently, the city court judge recused herself, and the second judge ruled that the case would be dismissed on double jeopardy grounds, but also ruled- Was there a criminal aspect to this? Because usually double jeopardy applies only in the criminal context. It was an unusual fact pattern, Your Honor. In this unusual episode, Tennessee state law permitted a holding of double jeopardy of this type of municipal ordinance violation. Strangely, it's not exactly a criminal matter, but the Tennessee state law on this point was a little bit unusual and did permit a double jeopardy. So this was not a constitutional double jeopardy claim. This was a state law double jeopardy finding. It was a state law double jeopardy finding, Your Honor. That's in cases of civil infractions, which are sometimes a substitute for misdemeanors in local court? Yes, Your Honor. It's sort of like a city ordinance violation. Very generally speaking, like parking tickets and de minimis, what I'll call de minimis criminal violations, there's this sort of hazy law on what a city court may do and may not do. Let me ask you another question going back to the exigency issue again. Is there anything in the record which would support a finding that on the day this seizure was made, the conditions at 8 o'clock in the morning or whatever the time was, were any different than they were any other day if you walked in the store at that time of the day? Well, the conditions at 8 a.m. on the day in question would be the same as the conditions at 8 a.m. on the previous day. That's my question. Or on any day? On any day because they're cleaning the store. There's actually six serving case law because I have represented this client in another matter, Your Honor, which holds that cleaning once a day is required by the federal regulations. It's not the same as continuous cleaning. Also, this, as I understand it, so correct me if I'm wrong, this wasn't an instance where this was a routine inspection, and when they walked in, supposing they did these once a month or something, they said, Oh, my gosh, these conditions are horrible. We're going to seize these animals. This was their arrival that date was with the intention to do exactly what they did. That's really a two-part question, Your Honor. I will take the last one. Yes, it is and always has been our client's intention that they always intended to do this. Yes. The second question, however, the proof in the record would show that, and counsel would tell you, that Ms. Walsh contends that she arrived on the scene that day in response to a complaint about the conditions at the store. As I understand, there was a call from either an employee or a former employee saying that a dead animal had been put in a freezer along with human food? That's correct, Your Honor. It was a former employee, yes. And there was also a feature about an animal being put in a compactor while still alive? Yes, we disputed that. Okay, so your belief, then, is that this appeal only deals with qualified immunity issues? Yes, Your Honor. And in particular, it only deals with the denial of qualified immunity as appealed by your employees? Yes, Your Honor. Thank you, Your Honor. Thank you. Judge Moore, I'd like to go straight to your question about the authority to revoke permits and seize animals and try to clear that up. There are federal laws, state laws, and city ordinances, and we're just talking about the city ordinance. And the city ordinance, section 734, page ID 1513, requires facilities to meet certain minimum standards. Subsection E states that if negligence in care or misconduct that is detrimental to animal care or to the public, the permit may be suspended. And that's what the officers did here. Now, that's a different standard, a different requirement than state rules, and there's nothing that prohibits the city from enacting something like this. The follow-up to that is the question before the court is not whether or not the pet store violated these regs. That issue was presented to the state court, and the state court allowed McKamey to seize the animals because it found them to be kept in neglect, and it was presented to the city court. And they got four days of presenting that evidence, and the city court concluded that removal of the animals was necessary. The question is whether the officers behaved in an objectively reasonable fashion. And given the complaint that Judge Moore referenced about that precipitated the arrival, given the evidence that they found that cannot be disputed, there are pictures in the record that are cited in the brief that show listless puppies baking in the heat of what is undisputed mid-80 degree weather, plus the broken cages, pictures of which are in the record. That makes it all objectively reasonable. And with all due respect to Judge Guy, there is no evidence, other than the internet link that counsel points to, that McKamey did anything other than try to do their job. They called a state officer and asked him, an independent state official, to come along to make sure they got this right. The independent state officer came along and concurred on the scene that the animals needed to be removed. So these are not officers that are out of control. These are officers that behaved reasonably. The second point, even if I don't persuade you on that, your honors, we didn't hear any clearly established authority. Nothing. There is no authority in this circuit establishing the right in this context. And without it, the Supreme Court is very clear, the officers are entitled to immunity as a matter of law. We ask that the court reverse the district court. Thank you, counsel. The case will be submitted.